UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KATHY GREENE,<br>    Petitioner,<br><br>v.<br><br>LORI RICKS, ET AL.<br>    Respondents. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:    PRISONER CASE NO.<br>   3:07cv60 (JCH)<br><br>   JUNE 29, 2009 |

**RULING ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 7)**

Petitioner, currently confined at the York Correctional Institution in Niantic, Connecticut, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. She challenges her conviction for manslaughter, assault, and risk of injury to a minor. For the reasons set forth below, the Amended Petition is denied.

**I.     PROCEDURAL BACKGROUND**

On September 22, 1999, in the Connecticut Superior Court for the Judicial District of Hartford, a jury found the petitioner guilty of manslaughter in the first degree, assault in the first degree, and risk of injury to a child. On November 18, 1999, the court sentenced petitioner to a total effective term of imprisonment of thirty years.

On direct appeal, petitioner argued that the trial court improperly admitted prejudicial and irrelevant evidence of her prior misconduct against the victim. The Connecticut Appellate Court affirmed petitioner's conviction. See State v. Greene, 69 Conn. App. 463, 464 (2002). On June 18, 2002, the Connecticut Supreme Court denied the petition for certification to appeal the decision of the Connecticut Appellate Court. See State v. Greene, 260 Conn. 934 (2002).

On December 3, 2002, in the Connecticut Superior Court for the Judicial District of New London, petitioner filed a petition for writ of habeas corpus on the ground that she was afforded ineffective assistance of counsel.  On February 13, 2004, petitioner filed an amended petition claiming that the attorneys who represented her at trial were ineffective because they "failed to: a) determine and develop [her] version of the facts; b) investigate the relevant facts; c) interview the relevant witnesses; d) utilize available means of discovery; e) communicate with [her] regarding what was occurring in trial and f) communicate with [her] regarding her options."  See Resp'ts' Mem. in Opp'n to Pet. for Writ of Habeas Corpus, App. E, at 4.  The state court denied the petition after a hearing.  See Greene v. Warden, No. 564264, 2005 WL 896237 (Conn. Super. Ct. March 16, 2005).  On March 23, 2005, the court denied the petition for certification to appeal the denial of the amended petition.  See Greene v. Comm'r of Correction, 96 Conn. App. 854, 856 (2006).  The Connecticut Appellate Court dismissed the appeal of the trial court's denial of the petition for certification.  See id. at 857.  The Connecticut Supreme Court denied certification to appeal the decision of the Appellate Court.  See Greene v. Comm'r of Correction, 280 Conn. 916 (2006).

## II.    FACTUAL BACKGROUND

The Connecticut Appellate Court determined that the jury could reasonably have found the following facts:

> The victim, Raegan McBride, was born on January 14, 1995. In December, 1996, the victim was enrolled by her parents into a licensed day care facility, which the [petitioner] operated out of her home in Windsor. The [petitioner] told the victim's mother, Patrice McBride, that she was a licensed medical technical aide and licensed to administer medication and to perform cardiopulmonary resuscitation. By agreement

and after an initial part-time trial period, the victim was placed in the [petitioner's] care Monday through Friday, from 7:15 a.m. to 5:30 p.m. The [petitioner] also agreed to discipline the victim by using only what is commonly known as "time outs," or periods of the child having to sit quietly alone.

On February 17, 1997, the victim was treated for an ear infection by her pediatrician, who agreed that she could still be placed in day care. On February 24, 1997, the victim's grandmother, Patricia Ward, took the still-ailing victim to the [petitioner's] home around 7:15 a.m. As Ward prepared to leave, the victim cried and grabbed Ward's leg. One of the [petitioner's] foster children told Ward that the victim always cried when she was left with the [petitioner] but that she would calm down soon. The [petitioner] then approached the victim and told her to stop crying or she would become angry. After reassuring the victim, Ward departed.

Just before 3 p.m. that afternoon, the [petitioner] called McBride at work to report that the victim was coughing up mucus and blood and making a strange breathing noise. The [petitioner] also asked whether the victim was ever diagnosed as having a seizure and insisted that McBride pick her up immediately. McBride told the [petitioner] that Ward would pick up the victim. McBride then called Ward, who agreed to do so. Subsequently, McBride left work and drove to the [petitioner's] home where she saw Ward's car and an ambulance parked outside.

The [petitioner] had placed a call for emergency assistance at approximately 3:05 p.m. Responding to that call, police officers and paramedics arrived and began administering first aid to the victim, whose condition had deteriorated into cardiac arrest. Contemporaneously, Ward told a police officer that the victim had an ear ache and was taking penicillin recently as treatment. The victim and Ward were then transported by ambulance to the Connecticut Children's Medical Center at Hartford Hospital. The [petitioner], having offered to do so, drove McBride to the hospital.

After receiving further medical attention at the hospital, the victim was pronounced dead at 4:12 p.m. Near the time of her death, the victim's treating physician, James Wiley, noted that she had suffered retinal hemorrhages in both

> eyes. This observation was consistent with a diagnosis of "shaken baby" or "shaken impact" syndrome. While at the hospital, McBride informed the [petitioner] of the victim's death and asked her what had happened. The [petitioner] did not reply. Ward also confronted the [petitioner], who threw her hands up and said, "There's no bruises on her." Ward then asked a physician to perform a full autopsy on the victim.
>
> On February 25, 1997, Edward McDonough, deputy chief state medical examiner, performed an autopsy on the victim. The autopsy of the victim disclosed no evidence of external injury, but revealed bleeding under the victim's scalp and in the tissue between her scalp and her skull, as well as bleeding around and tears in her brain. The autopsy also disclosed multiple skull fractures and that the victim's injuries occurred within about four to six hours of her death. Further, the victim's death was certified as a homicide and her ear infection was not related to her cause of death. These observations also were consistent with a diagnosis that "shaken impact" syndrome involving blunt force trauma *467 to the victim's head was the cause of the victim's death. Subsequent examinations of the victim's eyes, brain and skull revealed findings similar in kind and degree to those derived from the autopsy.

Greene, 69 Conn. App. at 464-67 (footnote omitted).

## III.   STANDARD OF REVIEW

A federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution, federal laws, or treaties.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in federal court. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by a state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).

Procedurally, a federal court must first determine whether the petitioner's claim "seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Williams v. Taylor, 529 U.S. 362, 390 (2000). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. Id. at 412.

Second, if the petitioner's claim is in fact based upon clearly established Supreme Court case law, the federal court must determine if the state court made a decision that was contrary to, or involved an unreasonable application of, that law. A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court, or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002) (citation omitted). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. Id. (citation omitted). The state court decision must be more than

5

incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citation omitted).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because collateral review of a conviction applies a different standard than on direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

Finally, habeas relief is also available if the state court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

The Amended Petition includes three grounds.[1] Petitioner argues that her conviction is unlawful because the trial court improperly admitted evidence of prior uncharged misconduct; her trial counsel, Public Defenders Sara L. Bernstein and Fred DeCaprio, were ineffective, and the state habeas court abused its discretion in failing to so find; and the state trial court erred in failing to grant certification to appeal the denial of the habeas petition.

### A.   Evidence of Uncharged Misconduct

Petitioner contends that the state court erred in admitting highly prejudicial and

---

[1] In Ground One of the amended habeas petition, petitioner asserts that the trial court erred in admitting evidence of uncharged misconduct. Ground Two includes a factual elaboration of the claim in Ground One. Thus, the court treats Grounds One and Two as one ground for purposes of this Ruling.

irrelevant evidence of uncharged misconduct. More specifically, petitioner argues that the trial judge abused his discretion in permitting two child witnesses to testify regarding related accounts of misconduct toward the victim.

As stated supra, a federal court's review of a habeas petition challenging a state conviction "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States," and does not include reexamination of determinations of a state court on issues of state law. Estelle, 502 U.S. at 67-68. The claim that the trial court erred in admitting evidence of uncharged misconduct is a question of state law and is not cognizable in a federal habeas corpus petition.[2] Accordingly, the Amended Petition for Writ of Habeas Corpus is denied as to this ground.

B. Ineffective Assistance of Counsel

The record reflects that, after her arrest, a judge appointed Public Defender Karen Goodrow to represent petitioner. In August 1998, after Attorney Goodrow was re-assigned to the Chief Public Defender's Office, a judge appointed Public Defenders

---

[2] Greene does not contend that the trial court wrongfully admitted the testimony of the two child witnesses in violation of Greene's due process rights under the federal constitution. However, such a claim would also fail, because Greene did not present it to the state courts. A state prisoner who brings a petition for writ of habeas corpus in federal court must ordinarily exhaust available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A). To exhaust a federal constitutional claim in state court, a petitioner must "fairly present[]" the "substance" of the federal claim to the state appellate court. Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) (citation omitted). "It is not enough that all the facts necessary to support a federal claim were before the state courts, or that a somewhat similar state-law claim was made." Id. (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied [her] the due process of law guaranteed by the Fourteenth Amendment, [she] must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 366 (1995).

Here, petitioner argued on direct appeal that the trial court's decision to admit evidence of uncharged misconduct by petitioner against the victim violated state law governing the admissiblility of evidence of prior misconduct. The petitioner made no argument that this evidentiary decision violated federal law and did not rely upon federal law in her brief on appeal. In addition, the Appellate Court resolved petitioner's claim regarding the admission of uncharged misconduct relying solely on state evidentiary law. Therefore, Petitioner failed to exhaust any due process claim that she may have had, and this court would be forced to dismiss such a claim as procedurally defaulted.

Sara L. Bernstein and Fred DeCaprio to represent petitioner. Attorneys Bernstein and DeCaprio represented petitioner during the remaining pretrial preparation period and at trial. Trial commenced on September 13, 1999.

Petitioner's claims of ineffective assistance of counsel are directed only at her "trial counsel," Attorneys Bernstein and DeCaprio. See Pet. at 13. Petitioner argues that Attorneys DeCaprio and Bernstein were ineffective because they failed to determine and develop her version of the facts, investigate relevant facts and potential witnesses, conduct discovery, and communicate with her regarding the progression of the trial and any options that might be available to her.[3]

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, petitioner must demonstrate first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to her. Id. at 687-88. Counsel is presumed to be competent. Thus, petitioner bears the burden of demonstrating unconstitutional representation. United States v. Cronic, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the Strickland test, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. Strickland, 466 U.S. at 694. The court evaluates counsel's conduct at the

---

[3] As the respondent notes, in Greene's pro se Petition, she does not specifically identify all of the bases of her claims that her trial counsel was ineffective, as she had done in her Amended Petition filed in the state habeas court. However, because Greene directs her federal filing at the alleged errors of the Connecticut courts in failing to find that she was denied the effective assistance of counsel, the court construes her Petition to raise the same claims of ineffective assistance that she raised in state court.

time the decisions were made, not in hindsight, and affords substantial deference to counsel's judgments. Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citation omitted). To prevail, petitioner must demonstrate both deficient performance and sufficient prejudice. Strickland, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In analyzing this claim, the Connecticut state courts applied the standard established in Strickland. Because they applied the correct legal standard, the state court decisions cannot meet the "contrary to" prong of section 2254(d)(1).

          1.     Failure to Develop and Determine Petitioner's Version of Facts

Petitioner argues that, in preparing her case for trial, Attorneys Bernstein and DeCaprio failed to determine and develop her version of the facts. The state court noted that petitioner's version of the facts was that she had done nothing to harm the victim, the victim was ill when her grandmother dropped her off at daycare, and she did everything that was humanly possible when it became apparent to her that the victim's condition had gotten worse.

The state court found that petitioner had met with an investigator and related her version of what had transpired on the day the victim died. Attorneys Bernstein and DeCaprio had reviewed the investigator's report as well as the sworn statements petitioner had made to the police detective who had interviewed petitioner on two occasions following the death of the victim. At the end of the trial, petitioner met with her husband and Attorneys DeCaprio and Bernstein to determine whether she would testify and give her version of the facts. All parties agreed that petitioner's testimony would be unnecessary because her version of the facts would be placed into evidence

through the testimony of a police detective who had interviewed petitioner after the death of the victim. Greene elected not to testify. At the habeas trial, petitioner confirmed that it was her decision not to testify at trial.

The state court also found that Attorneys DeCaprio and Bernstein were aware that the medical evidence would not support petitioner's version of the events. In response, the attorneys retained a forensic pathologist to review all of the medical reports and provide findings that might counter the state's medical evidence.

The state court concluded that petitioner had not proven that the performance of Attorneys DeCaprio and Bernstein in eliciting petitioner's version of the facts leading to the death of the victim and further developing that version and presenting it to the jury was deficient. Upon review, this court concludes that, with regard to Greene's claim that counsel failed to develop and determine her version of the facts, the state court reasonably applied clearly established federal law and reasonably determined the facts in light of the evidence presented.

        2.    Failure to Investigate Facts, Interview Witnesses and Utilize Available Discovery

Petitioner contends that Attorneys DeCaprio and Bernstein failed to investigate the facts, interview witnesses, and conduct discovery. Petitioner has a right to have counsel perform an adequate investigation. She has no right, however, to have counsel pursue every evidentiary lead without regard to whether the lead is likely to reveal evidence beneficial to the defense. Counsel has provided effective assistance if he or she makes reasonable decisions to investigate or not investigate certain leads. Even an unreasonable decision not to investigate will not rise to the level of ineffective

assistance if that decision had no effect on the conviction. See Strickland, 466 U.S. at 691-92.

The state court found that Public Defender Goodrow, who initially represented petitioner, had assigned an investigator to meet with petitioner to review the allegations in the arrest warrant affidavit. The investigator met with petitioner, reviewed the arrest warrant allegations with her, obtained her version of the events leading to the victim's death as well as the names of potential witnesses, and issued a report documenting the meeting. The investigator interviewed individuals mentioned by petitioner in the meeting as well as individuals mentioned in the arrest warrant affidavit. In August 1998, before petitioner's case went to trial, Attorney Goodrow was reassigned to another office and the court appointed Public Defenders Bernstein and DeCaprio as counsel for petitioner. At the time Attorney Bernstein took over petitioner's case, she spoke with Attorney Goodrow, read her notes and case summary, reviewed the arrest warrant affidavit and the investigator's reports, and spoke with the psychiatrist who had examined petitioner.

The state court also found that Greene's attorneys initiated discovery. Boxes of material, including Department of Children and Families and Children's Village records, were produced to the attorneys. Attorney Bernstein learned that the prosecutor was going to call forty child witnesses to testify as to prior uncharged misconduct against the petitioner, and filed a motion to exclude this testimony. After a conference with the judge, the judge ruled that the prosecutor would be limited to calling only two witnesses

to testify as to prior uncharged misconduct.[4]

Attorneys Bernstein and DeCaprio met with the medical examiner and forensic pathologist who had participated in the autopsy of the victim and also consulted with a forensic pathologist who had reviewed all the medical reports. After a discussion with the psychiatrist regarding his examination of the petitioner, both attorneys agreed that insanity would not be a viable defense. Attorney DeCaprio also reviewed all of the case material and spoke with the medical examiner.

The state court concluded that the attorneys had engaged in thorough investigation of facts and witnesses and had conducted diligent discovery in anticipation of trial. It also concluded that at trial, this thorough preparation was evident in their cross-examination of the state's witnesses. The court also found that petitioner had not presented evidence that supported her claim that Attorneys Bernstein and DeCaprio had failed to adequately investigate factual allegations, interview witnesses, or conduct discovery.

The state court concluded that petitioner had not proven that counsel had performed in a deficient manner during pre-trial investigation of facts and witnesses and discovery. Upon review, this court concludes that, with regard to Greene's claim that her attorneys failed to investigate facts, interview witnesses, or utilize available discovery, the state court reasonably applied clearly established federal law and reasonably determined the facts in light of the evidence presented.

---

[4] Furthermore, even after the trial court's initial decision, Bernstein continued to voice strong objections to the judge's decision in open court until the judge terminated the colloquy. See Trial Tr. 9/15/99 at 1-9.

### 3. Failure to Communicate

Petitioner argues that her trial counsel only met with her once before trial and failed to explain how the trial would proceed, and that counsel failed to notify her as to potential evidence against her or potential witnesses who might be called to offer testimony. Attorney Bernstein testified that she had met with petitioner on many occasions at the court house and at the public defender's office. During one of the meetings, Attorneys Bernstein and DeCaprio reviewed the allegations in the arrest warrant affidavit and explained the statutes that petitioner was charged with violating. At another meeting, Attorney Bernstein explained to petitioner and her husband how the evidence would likely unfold, the names of the witnesses likely to testify, and the likely outcome of the trial. As stated above, both Attorneys Bernstein and DeCaprio met with petitioner and her husband to discuss whether she would testify or not. Petitioner testified at the habeas trial that she chose not to testify in her criminal trial. The court discredited the testimony of the petitioner as to her ignorance of who the witnesses at trial might be because the witnesses were identified in her presence during jury selection. The trial court concluded that petitioner had not met her burden of showing that counsel had failed to meet with her a sufficient number of times or keep her informed about the trial. Upon review, this court concludes that with regard to Greene's failure to communicate claim, the state court reasonably applied clearly established federal law and reasonably determined the facts in light of the evidence presented.

Because the state courts reasonably applied clearly established federal law and reasonably determined the facts in light of the evidence presented as to all parts of

Greene's ineffective assistance of counsel claim, the Amended Petition is denied as to this ground.

### C.     Denial of Petition for Certification to Appeal

Pursuant to Connecticut General Statutes § 52-470(b), a petitioner may not file an appeal of the denial of a habeas petition unless he or she, "within ten days after the case is decided, petitions the judge before whom the case was tried . . . to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."  The petitioner argues that the trial court abused the discretion afforded to it under Connecticut General Statutes § 52-470(b) in denying her petition for certification to appeal the denial of her state petition for writ of habeas corpus.

The only claims cognizable in a federal habeas corpus action are that a state conviction was obtained in violation of a right guaranteed by the United States Constitution, federal laws, or treaties.  See Estelle, 502 U.S. at 67-68 (emphasizing that federal courts may not review or grant relief for a claim that a state conviction was obtained in violation of state law).  The petitioner has no federal constitutional right to assert a challenge to his conviction in a collateral proceeding.  See Pennsylvania v. Finley, 481 U.S. 551, 556-57 (1987) (citing United States v. MacCollom, 426 U.S. 317, 323 (1976)) ("[Postconviction relief] is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction.  States have no obligation to provide this avenue of relief.")).  Furthermore, under Connecticut law, the trial court has discretion as to whether or not to grant a petition for certification to appeal the denial of a habeas petition.  See Simms v. Warden, 230 Conn. 608, 616

(1994) (trial court's denial of petition for certification to appeal denial of habeas petition under Conn. Gen. Stat. § 52-470(b) constitutes abuse of discretion if habeas petitioner can demonstrate "that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further") (internal quotation marks, citations, and alterations omitted).  Thus, a claim that the state court abused its discretion in denying the petitioner certification to appeal the denial of a state habeas petition is a matter of state law and is not cognizable in this action.  The Amended Petition for Writ of Habeas Corpus is denied as to this ground.

## IV.     CONCLUSION

The Amended Petition for Writ of Habeas Corpus (Doc. No. 7) is **DENIED**. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED**.

Dated this 29th day of June 2009, at Bridgeport, Connecticut.

       /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge